IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark J. Iannetti,            :
          Petitioner      :
                         :
          v.             :    No. 488 C.D. 2018
                         :    Argued: March 12, 2019
Unemployment Compensation Board  :
of Review,             :
          Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: April 30, 2019

Mark J. Iannetti (Claimant) petitions for review of an adjudication of the Unemployment Compensation (UC) Board of Review (Board) that affirmed a Referee's decision that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law), 43 P.S. §802(e),[1] and liable under Section 804(a) of the Law, 43 P.S. §874(a), for a "fault" overpayment of $2,000 in benefits he received. In so holding, the Board found that Claimant did not choose the correct reason for his discharge when he filled out his online application for unemployment compensation. On appeal, Claimant challenges the Board's holding because it did not make a specific finding that he deliberately chose the wrong reason for his discharge. Without a finding that he acted deliberately, Claimant asserts that he cannot be assessed for a fault overpayment. For the reasons that follow, we affirm the Board's decision.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

Claimant worked full-time for Rafferty Subaru (Employer) as an administrative assistant. Employer's policy required every employee to notify his supervisor of an absence, either directly or by leaving a message. Leaving a message with someone other than one's supervisor was unacceptable, and this policy was made known to Claimant.

On July 18, 2017, Claimant notified Employer's service director, who was Claimant's supervisor, that he would be absent July 19, 2017, for an eye appointment. On July 20, 2017, Claimant sent a text message to Employer's receptionist asking her to inform the service director that he would also be absent that day. The receptionist responded that Claimant should contact the service director, but he did not do so. Later in the evening of July 20, 2017, Claimant sent another text message to the receptionist and informed her that he would also be absent on July 21, 2017. Claimant reported to work on July 24, 2017. The service director discharged Claimant that day because he had not properly reported his absences on July 20 and July 21, 2017.

Claimant submitted an online application for unemployment compensation. Claimant identified the reason for his separation from Employer as "lack of work," which was one of the choices provided in the drop-down menu on the application. For five weeks, ending August 5, 2017, through September 2, 2017, Claimant received a total of $2,000 in unemployment compensation.

Thereafter, based on information provided by Employer, the UC Service Center concluded that Claimant was ineligible for the benefits he had received. The UC Service Center issued three Notices of Determination. The first notice advised Claimant that he was ineligible for benefits under Section 402(e) of

the Law.[2]  The second notice advised Claimant that because he was at fault for the overpayment of $2,000 in benefits, he had to repay that amount plus interest in accordance with Section 804(a) of the Law, 43 P.S. §874(a).  The third notice imposed a ten-week penalty upon Claimant and a $300 penalty under Section 801(b) of the Law, 43 P.S. §871(b), for the stated reason that Claimant had knowingly made a false statement in his application for unemployment compensation.  Claimant appealed, and the Referee held a hearing.

At the hearing, Claimant testified that when he applied online for unemployment compensation benefits, he selected "lack of work" as his reason for separation from Employer.  He explained this choice in response to questions from the Referee:

> R[:] [W]hen you filed your Unemployment Claim, what reason did you report was why you were unemployed and no longer working for [Employer]?
>
> C[:] Well, from the drop-down, the best suitable answer, I thought, was a lack of work because there [were not] any choices to really fit my situation that I could have selected.
>
> R[:] Well, did [Employer] ever indicate to you that you were terminated?
>
> C[:] Well, yeah, I was told that morning of the 24th that my services…[crosstalk]
>
> R[:] So, then why did you assume that you – it was a lack of work as opposed to a discharge or a termination?
>
> C[:] Well, the reason being … I was under the assumption it was asking why [I was] no longer employed.

---

[2] Section 402(e) states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...." 43 P.S. §802(e).

R[:] Well, did [Employer] tell you that they no longer had your job available to – like, that the assistant job was going away or being eliminated or anything like that?

C[:] No, [it was] just that my services were no longer needed.

Notes of Testimony (N.T.), 10/23/2017, at 15-16; Certified Record (C.R.), Item No. 10.  In short, Claimant believed "lack of work" was the option that "most logically fit [his] situation," *i.e.*, that "his services were no longer needed." N.T. 18.

Claimant's supervisor, Employer's service director, testified.  He explained that Employer's policy required employees to call him on his office phone or cell phone to report an absence.  Employees may leave a voicemail if he does not pick up his phone.  Claimant did not call him personally to report his absences on July 19, July 20 or July 21.[3]  When Claimant returned to work on July 24, the service director informed Claimant his services were no longer needed and that he was being terminated because he did not call off the previous week in the manner required by Employer's policy.

The Referee affirmed the UC Service Center's determination in part and reversed in part.  The Referee affirmed the determination that Claimant was ineligible for unemployment compensation under Section 402(e) of the Law because he did not comply with Employer's policy for reporting absences, and this constituted willful misconduct.  The Referee also held that Claimant was at fault for the overpayment of $2,000 in unemployment compensation benefits because he reported "lack of work" as the reason for his separation from Employer when Claimant knew, or should have known, that his separation was caused by his failure

---

[3] The Referee found, however, that Claimant directly notified the service director that he would be absent on July 19 for an eye appointment in accordance with Employer's policy.

to report absences correctly. Finally, the Referee reversed the UC Service Center's imposition of penalties, explaining:

> [A]lthough the Referee finds [Claimant] at fault for his receipt of benefits to which he was not entitled, the *Referee cannot conclude [Claimant] intentionally or deliberately misrepresented his separation* from employment for the express purpose of obtaining benefits to which he was not entitled.

Referee Decision, 10/24/2017, at 5 (emphasis added). Claimant appealed to the Board.

On appeal, the Board affirmed the Referee. The Board issued its own findings of fact and conclusions of law. The Board reasoned as follows:

> Here, [Claimant] received $2000.00 in benefits to which he was not entitled, so an overpayment exists. [Claimant] received these benefits because he told the Department he was unemployed due to lack of work. *[Claimant] admitted that he knew he was discharged for unreported absences, so the Board discredits his assertion that he thought he selected the most applicable choice with "lack of work."* Consequently, [Claimant] was at fault for receiving these benefits and they must be repaid under Section 804(a) of the Law. Although [Claimant] should have known better, *the Board does not believe [Claimant's] misrepresentation was deliberate*, so penalties are inappropriate under Section 801 of the Law.

Board Adjudication, 3/14/2018, at 3 (emphasis added). Claimant now petitions for this Court's review.

On appeal,[4] Claimant argues that the Board erred in holding that he was at fault for the overpayment of benefits, and, thus, liable to repay those benefits under

---

[4] Our review determines "whether constitutional rights were violated, [whether] an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence." *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

Section 804(a) of the Law.  Specifically, Claimant argues that selecting the incorrect reason for separation from employment from a list of options on the online application for benefits did not evidence "blameworthy conduct."  Claimant Brief at 9.  He contends that because he did not receive a written notice of termination and because he was told that his services were no longer needed, he was confused about the reason for his unemployment.  His belief that "lack of work" was an appropriate choice was reasonable.

We begin with a review of Section 804 of the Law, which addresses the Department's recoupment of overpayments of unemployment compensation benefits.  Section 804 distinguishes between those claimants who receive an overpayment through no fault of their own and those claimants whose "fault" caused the overpayment.

Section 804(a) of the Law, which addresses fault overpayments, states, in relevant part, as follows:

> *Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled*, shall be liable to *repay* to the Unemployment Compensation Fund to the credit of the Compensation Account *a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue* as provided by section 806 of the act of April 9, 1929 (P.L. 343, No. 176), known as "The Fiscal Code," per month or fraction of a month from fifteen (15) days after the Notice of Overpayment was issued until paid.

43 P.S. §874(a) (emphasis added).  The statutory interest rate is 15%.[5]  Collection of the overpayment with interest can be done by placing a lien on the personal and

[5] According to the Department's website, the Section 804(a) interest rate is 15%.  *See Overpayments FAQS*, PENNSYLVANIA DEPARTMENT OF LABOR & INDUSTRY, http://www.uc.pa.gov/faq/claimant/Pages/Overpayments-FAQS.aspx (last visited April 3, 2019).  The Secretary of Revenue determines the rate of interest pursuant to Section 806 of the Fiscal

real property of the claimant; by filing a civil action; by deducting the full amount of the overpayment from future compensation benefits until fully paid; or all of the above. 43 P.S. §874(a).[6]

Section 804(b)(1) of the Law addresses non-fault overpayments. It states, in relevant part, as follows:

> *Any person who other than by reason of his fault has received* with respect to a benefit year *any sum as compensation under this act to which he was not entitled shall not be liable to repay such sum* but shall be liable to have such sum deducted from any future compensation payable to him with respect to such benefit year, or the three-year period immediately following such benefit year….

43 P.S. §874(b)(1) (emphasis added). Thus, where the overpayment is not the fault of the claimant, recoupment is made only by deductions from future compensation, if any. There are other limits upon this kind of recovery. First, the claimant is not liable for any interest. Second, the future deduction cannot "exceed one-third of the maximum benefit amount … nor one-third of the weekly benefit amount … for any particular week." 43 P.S. §874(b)(1)(i). In sum, the Department's recovery of a

---

Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §806. The interest rate changes annually.

[6] Section 804(a) of the Law provides that an overpayment of benefits caused by a claimant's fault "shall be collectible (1) in the manner provided in section 308.1 [added by the Act of April 23, 1942, Ex. Sess., P.L. 60,] or section 309 of this act, for the collection of past due contributions, or (2) by deduction from any future compensation payable to the claimant under this act…." 43 P.S. §874(a). Section 308.1 permits a lien to be attached to real or personal property to secure the Department's recovery of the overpayment. 43 P.S. §788.1 ("All contributions and the interest and penalties thereon due and payable … under the provisions of this act shall be a lien upon the … property, both real and personal, including after-acquired property…."). Section 309 allows for collection of an overpayment by filing a civil action. 43 P.S. §789 ("[A]fter notice by the department … the amount due may be collected by civil action in the name of the Commonwealth. Judgments obtained in such civil actions to collect any of the contributions aforesaid shall include interest and penalties, as provided in this act.").

fault overpayment of unemployment compensation contains punitive elements that do not apply where the overpayment is not the fault of the claimant.

Citing *Fugh v. Unemployment Compensation Board of Review*, 153 A.3d 1169 (Pa. Cmwlth. 2017), Claimant observes that a claimant cannot be held liable for a fault overpayment because of mere negligence, *i.e.*, a mistake or confusion. Claimant argues that because the Board did not find his choice of "lack of work" to be deliberate so as to warrant penalties under Section 801(b) of the Law, he cannot be held liable for a fault overpayment.

The Board responds that because Claimant "falsely advised the Department he was unemployed due to lack of work, his disregard of [his duty to be truthful] shows the 'knowing recklessness or gross negligence' that justifies a fault overpayment under Section 804(a) of the Law." Board Brief at 13-14 (citing *Fugh*, 153 A.3d at 1176).

In *Fugh*, the claimant worked as a customer care associate for a car dealership while undergoing a high risk pregnancy and suffering other ailments that required weekly doctor appointments. The employer reduced her weekly hours, took away her desk and assigned her work to other employees. The employer informed claimant that these changes were made because she had too many doctor appointments. The claimant resigned and applied for unemployment compensation benefits. The claimant selected "lack of work" as the reason for her separation from the employer. She collected unemployment benefits, which the UC Service Center later determined were subject to a fault overpayment. The UC Service Center also assessed penalties under Section 801(b).

At the hearing, the claimant testified that she construed "lack of work" to refer to a reduction in the hours of work that the employer had made available to

8

her. The referee held that the claimant was ineligible for benefits and at fault for the overpayment because she reported "lack of work" as the reason for her separation from the employer when, in actuality, she had voluntarily resigned. The referee reversed the Service Center's imposition of penalties, finding that the claimant had made a mistake when entering her reason for separation. The Board affirmed, adopting the referee's decision in its entirety.

On appeal, the claimant argued that the Board erred in holding her liable for a fault overpayment because her misunderstanding of "lack of work" did not rise to the level of "fault." This Court agreed and explained that consistent with longstanding precedent, "fault" means "more than volition, more than a voluntary act." *Fugh*, 153 A.3d at 1174. Instead, "fault" requires an act "to which blame, censure, impropriety, shortcoming, or culpability attaches." *Id.* at 1175. We declined, as requested by the Board, to overrule our holding in *Daniels v. Unemployment Compensation Board of Review*, 309 A.2d 738, 741-42 (Pa. Cmwlth. 1973), which adopted this understanding of "fault." Instead, looking to the meaning of willful misconduct pursuant to Section 402(e) of the Law, we held that "[a] negligent act alone does not constitute willful misconduct; rather, the conduct must be of an intentional and deliberate nature." *Fugh*, 153 A.3d at 1176 (quotation marks omitted). Notably, in the context of assessing whether misconduct is willful, a finding of fault "requires conduct of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *Id.* (quotation marks omitted). A similar state of mind must be demonstrated to make a finding of fault for purposes of Section 804(a) of the Law. *Id.* at 1176 n.10.

9

In *Fugh*, the Board found, as fact, that the claimant had "made a mistake" when reporting "lack of work" as the reason for her separation from employment and concluded that a penalty was inappropriate. The record did not show that the claimant had disregarded the truth of the information she provided in the application, and she was not found to be grossly negligent. We concluded: "[t]he commission of a mere voluntary act does not establish fault. The Board cannot hold a claimant liable for a fault overpayment for a mere mistake or confusion." *Id.* at 1777 (citations omitted). Therefore, in *Fugh*, we held that the claimant was not liable for a fault overpayment.

Here, as in *Fugh*, the Board held that penalties were not appropriate because Claimant's conduct in choosing "lack of work" was not deliberate or done for the purpose of obtaining benefits improperly. However, the Board did not find that Claimant made a "mistake" in choosing "lack of work," as it did in *Fugh*. After some equivocation, Claimant testified that he understood he was dismissed for not "call[ing] out properly." N.T. 17. The Board observed that "despite knowing he was discharged for his unreported absences," Claimant stated that he was unemployed for lack of work. Board Adjudication, 3/14/2018, at 2, Finding of Fact No. 10. The Board discredited Claimant's statement that he thought he selected the most applicable choice with "lack of work" because Claimant admitted that he was discharged for unreported absences. *Id.* at 3. Claimant, knowing the reason for his dismissal, was grossly negligent in choosing "lack of work."

For these reasons, we affirm the Board's decision finding Claimant ineligible for benefits and liable for a "fault" overpayment of $2,000 in benefits he received.

_____
MARY HANNAH LEAVITT, President Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark J. Iannetti,                              :
                 Petitioner         :
                                   :
                v.                        :    No. 488 C.D. 2018
                                   :
Unemployment Compensation Board  :
of Review,                                     :
                 Respondent      :

# **O R D E R**

AND NOW, this 30th day of April, 2019, the order of the Unemployment Compensation Board of Review, dated March 14, 2018, in the above-captioned matter is AFFIRMED.

                                   _____

                                   MARY HANNAH LEAVITT, President Judge