IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Franklin E. Marshall, | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | No. 1332 C.D. 2024 |
| | : | No. 1500 C.D. 2024 |
| Unemployment Compensation | : | Submitted: December 8, 2025 |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge (P.)
HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED:  January 13, 2026


Franklin E. Marshall (Claimant), pro se, seeks review of two Orders of the Unemployment Compensation Board of Review (Board), which affirmed decisions by a referee that found Claimant received $9,280 in Pandemic Emergency Unemployment Compensation (PEUC) and $4,800 in Federal Pandemic Unemployment Compensation (FPUC) benefits to which Claimant was not entitled and, accordingly, assessed a non-fraud overpayment for those amounts.  On appeal, Claimant argues the Board did not take into consideration that he repaid the benefits.  Because whether an overpayment occurred is a separate inquiry from whether repayment has occurred, and the Board and this Court are limited to review of the former, we affirm the Board's Orders.  However, similar to the Board, we direct the Department of Labor and Industry (Department) to examine its records and

determine what, if any, liability remains given Claimant's assertion that the overpayment has previously been repaid.

In July 2023, Claimant received two notices indicating he was erroneously paid $9,280 in PEUC benefits and $4,800 in FPUC benefits. (Certified Record (C.R.) at 26, 143.) Claimant appealed and a consolidated hearing was held at which Claimant presented documentary evidence and testified as follows. Claimant received benefits until he returned to work on April 19, 2021. (*Id.* at 72.) At that point, Claimant stopped filing claims. (*Id.*) On August 13, 2021, Claimant noticed that a lump sum payment of $12,672 in benefits was deposited into his bank account. (*Id.*) Claimant immediately began calling trying to figure out what occurred and the bank froze his account. (*Id.*) Claimant ultimately spoke with individuals in the Department's fraud unit, which advised him to file a police report, which he did. (*Id.*) "[A]fter going back and forth," Claimant's bank returned the money, per the instructions on the Department's website. (*Id.* at 72-73.)

The Referee reviewed Claimant's account during the hearing and stated that there was no credit documented. (*Id.* at 73.) Claimant stated he made numerous phone calls and even spoke with the Pennsylvania Treasury (Treasury), which advised him to contact the Department. (*Id.*) Claimant was subsequently told by the Department that the payment was not "linked to [his] account" and it would take three to six months to do so. (*Id.* at 74.) At the hearing, the Referee looked up the Department website, which directed funds be returned to the Department at 651 Boas Street, Room 500, Harrisburg, and the Referee stated it would be printed and added to the record as Claimant's Exhibits 1 through 4, (*id.* at 74-75), but those exhibits do not appear in the Certified Record. The Referee further explained that the 1099 form that Claimant stated he received would inaccurately reflect the overpayment and

2

would result in additional money credited to Claimant as taxes. (*Id.* at 75, 82.) If Claimant already paid the $12,672, the Referee explained Claimant would only be liable for the remaining $1,408, which reflected the amount withheld in taxes. (*Id.* at 85, 87.)

Following a hearing, the Referee found Claimant initially obtained benefits on his own behalf but Claimant ceased filing for benefits once he returned to work. (Referee's Decisions, Findings of Fact (FOF) ¶¶ 1-5.)[1] The Referee further found that subsequent thereto, an unknown individual filed for benefits, and, as a result, $12,672 was directly deposited into Claimant's bank account. (*Id.* ¶¶ 6-7.) In addition, the Referee found that an additional $1,408 was withheld, reflecting $88 per week for federal income tax. (*Id.* ¶ 8.) Accordingly, the Referee found a $9,280 non-fraud overpayment for PEUC benefits and a $4,800 non-fraud overpayment for FPUC benefits was established. (Referee's Order.)

Claimant subsequently appealed to the Board, which affirmed.[2] The Board adopted and incorporated the Referee's findings and conclusions. (Board's Orders at 1.) The Board explained that the sole issue before it was "whether [] [C]laimant received benefits to which he was not entitled." (*Id.*) It found there was an overpayment, although it was the result of a fraudulent claim, which was not Claimant's fault. (*Id.*) Thus, it affirmed the Referee's Decisions. (*Id.* at 2.) The Board further stated "**[t]he UC Service Center is directed to investigate whether [] [C]laimant has already repaid the overpayments, as per his testimony.**" (*Id.* (emphasis in original).)

---

[1] The Referee issued identical decisions, which can be found in the Certified Record at pages 93-96 and 156-59.

[2] Similar to the Referee, the Board issued identical Orders, which can be found in the Certified Record at pages 120-21 and 169-70.

Claimant then petitioned this Court for review.[3] On appeal,[4] Claimant argues the amount he owes towards the non-fault overpayments should be reduced by the amount of money that was returned. He points to the testimonial and documentary evidence to this effect for support. He requests that the Court direct the Board to modify its Orders to reflect that only $1,408 remains due.

The Board responds that it properly determined there was an overpayment through no fault of Claimant, as Claimant himself acknowledged he received the benefits. The Board asserts that is the sole issue before it and this Court. To the extent Claimant already repaid those benefits, the Board argues that is a matter outside of its purview. According to the Board, any funds repaid go to the Treasury and the Department would be responsible for ensuring Claimant's account is credited properly.

FPUC and PEUC benefits were paid pursuant to under the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act), 15 U.S.C. §§ 9001-9034.[5] Sections 2104(f)(2) and 2107(e)(2) each provide:

> In the case of individuals who have received amounts of [FPUC or PEUC] to which they were not entitled, the State shall require such individuals to repay the amounts of such [benefits] to the State agency, except that the State agency may waive such repayment if it determines that—
>
> > (A) the payment of such [benefits] was without fault on the part of any such individual; and

---

[3] Upon application by the Board, the Court consolidated these two matters by order dated December 20, 2024.

[4] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[5] PUA benefits are provided under Section 2102 of the CARES Act, 15 U.S.C. § 9021.

(B) such repayment would be contrary to equity and good conscience.

15 U.S.C. §§ 9023(f)(2), 9025(e)(2). Recovery of such overpayments is to be made "in accordance with the same procedures as apply to the recovery of overpayments of regular unemployment benefits paid by the State." 15 U.S.C. §§ 9023(f)(3)(A), 9025(e)(3)(A). Section 804 of the Unemployment Compensation Law (UC Law), 43 P.S. § 874,[6] governs recovery and recoupment of unemployment compensation benefits within the Commonwealth.

Here, Claimant does not dispute he received benefits to which he was not entitled. He has been forthright to that effect since he first discovered the deposit of those benefits into his bank account, at which time he immediately sought to rectify the situation. Because Claimant was the victim of fraud, a non-fault overpayment was established, rather than a fault overpayment, which "connotes 'an act to which blame, censure, impropriety, shortcoming, or culpability attaches.'" *Fugh v. Unemployment Comp. Bd. of Rev.*, 153 A.3d 1169, 1174 (Pa. Cmwlth. 2017) (quoting *Daniels v. Unemployment Comp. Bd. of Rev.*, 309 A.2d 738, 742 (Pa. Cmwlth. 1973)).

The crux of Claimant's argument is that he already repaid $12,672 and, therefore, should only be responsible for $1,408, which represents the amount withheld for taxes. He claims the Referee and the Board erred and/or capriciously disregarded evidence of that repayment. We are sympathetic to Claimant and understand his frustration. However, as we previously explained, "the only issues before the Board . . . were whether Claimant received an overpayment . . . and whether the [] overpayment was fraudulent." *Mull v. Unemployment Comp. Bd. of*

---

[6] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 874.

*Rev.* (Pa. Cmwlth., No. 1518 C.D. 2022, filed Dec. 21, 2023), slip op. at 6.[7] There, the claimant similarly argued that he had partially repaid the overpayments and requested that we reduce the amount he owed. *Id.* We explained that was beyond the scope of the appeal. *Id.* at 6-7.

Here, too, we are constrained as we were in *Mull*. Because it is undisputed that Claimant received an overpayment, albeit through no fault of his own, the Board did not err in so holding. Accordingly, we affirm the Board's Orders. However, as the Board stated in its Order, "**[t]he UC Service Center is directed to investigate whether [] [C]laimant has already repaid the overpayments, as per his testimony.**" (Board's Orders at 2 (emphasis in original).)

_____
RENÉE COHN JUBELIRER, President Judge

---

[7] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Franklin E. Marshall, : CASES CONSOLIDATED
                Petitioner :
 :
        v. : No. 1332 C.D. 2024
 : No. 1500 C.D. 2024
Unemployment Compensation :
Board of Review, :
            Respondent :

# **O R D E R**

**NOW**, January 13, 2026, the Orders of the Unemployment Compensation Board of Review, entered in the above-captioned matters, are **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge